UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>    vs.<br><br>STEPHEN TANABE,<br><br>            Defendant. | Case No:  CR 11-0941 SBA<br><br>**ORDER DENYING<br>MOTION TO DISMISS**<br><br>Docket 39 |

The parties are presently before the Court on Defendant Stephen Tanabe's ("Defendant") motion to dismiss the superseding indictment under Rule 12(b) of the Federal Rules of Criminal Procedure.  Dkt. 39.  The United States ("government") opposes the motion.  Dkt. 40.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES the motion to dismiss, for the reasons stated below.

I.      BACKGROUND

    A.      Factual Background

At all times relevant to the superseding indictment, Defendant was a Deputy Sheriff with the Contra Costa County Sheriff's Office, assigned to work patrol in Danville, California.  Superseding Indictment ¶ 1.  Beginning on a date unknown, but no later than November 2, 2010, and continuing through at least on or about January 14, 2011, Defendant and others engaged in an illegal scheme and conspiracy to defraud others by depriving them of their rights to Defendant's honest services as a Deputy Sheriff.  Id. ¶ 2.

Beginning on a date no later than November 2, 2010, a private investigator, C.B., agreed to conduct "stings" of husbands and ex-husbands (hereafter "targets") for female

clients involved in divorce, child custody, and other family law disputes.  Superseding Indictment ¶ 3.  In cases in which the clients advised C.B. that the targets had a tendency to drink and drive, C.B. would arrange for an undercover employee to meet the target at a bar, direct the employee to entice the target to drink alcohol until he was intoxicated, and have a police officer waiting outside the bar to stop and arrest the target for driving under the influence of alcohol ("DUI").  Id.

As part of this scheme, Defendant agreed to and did participate in three DUI stings.  Superseding Indictment ¶ 4.  In two stings, Defendant waited outside the bar for the targets, H.A. and M.K., to exit and then stopped the targets shortly after they drove off.  Id.  In the third sting, Defendant arranged for another Deputy Sheriff to wait outside the bar, while he remained inside the bar with C.B., monitoring the alcohol intake of the target, D.B.  Id.  In all cases, the targets were stopped and arrested for DUI.  Id.  In his incident reports for the arrests he made, Defendant falsely stated that he was on "routine patrol" at the time of the targets' arrests.  Id.

In exchange for Defendant making DUI arrests and arranging for another officer to make an arrest, C.B. compensated Defendant with cocaine and a firearm.  Superseding Indictment ¶ 5.  As part of the scheme, Defendant and C.B. exchanged text messages regarding coordination of the arrests and Defendant's compensation for his role in the arrests.  Id. ¶ 6.  The texts to and from C.B. passed through the servers of C.B.'s cell service provider, Sprint, located in Kansas City, Missouri.  Id.

   B.    **Procedural History**

On December 15, 2011, a grand jury returned a four-count indictment charging Defendant with one count of conspiracy to extort under color of official right in violation of 18 U.S.C. § 1951; one count of extortion under color of official right, aiding and abetting in violation of 18 U.S.C. §§ 1951 and 2; and two counts of extortion under color of official right in violation of 18 U.S.C. § 1951.  Indictment, Dkt. 1.  On April 25, 2012, a grand jury returned an eight-count superseding indictment charging Defendant with one count of conspiracy to commit wire fraud and deprivation of honest services in

violation of 18 U.S.C. § 1349; three counts of wire fraud and deprivation of honest services in violation of 18 U.S.C. §§ 1343 and 1346; one count of conspiracy to extort under color of official right in violation of 18 U.S.C. § 1951; one count of extortion under color of official right, aiding and abetting in violation of 18 U.S.C. §§ 1951 and 2; and two counts of extortion under color of official right in violation of 18 U.S.C. § 1951.  Superseding Indictment, Dkt. 24.

On July 16, 2012, Defendant filed a motion to dismiss the superseding indictment.  Dkt. 39.  The government filed an opposition on July 31, 2012.  Dkt. 40.  Defendant did not file a reply brief.

## II.   DISCUSSION

### A.   Legal Standard

An indictment "must be a plain, concise and definite written statement of the essential facts constituting the offense charged. . . ."  Fed.R.Crim.P. 7(c)(1).  A defendant may move to dismiss the indictment for failure to state an offense under Federal Rule of Criminal Procedure 12(b).  "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment."  United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002) (citations omitted).  "On [such] a motion . . . , the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged."  Id. (citation omitted).

"An indictment must provide the essential facts necessary to apprise a defendant of the crime charged; it need not specify the theories or evidence upon which the government will rely to prove those facts."  United States v. Cochrane, 985 F.2d 1027, 1031 (9th Cir. 1993) (citing United States v. Jenkins, 884 F.2d 433, 438-439 (9th Cir. 1989)).  An indictment is sufficient to withstand a motion to dismiss if it (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend" and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  United States v. Lazarenko, 564 F.3d 1026, 1033 (9th Cir. 2009) (quotation marks omitted).  An indictment should be read in its entirety,

construed according to common sense, and interpreted to include facts which are necessarily implied.  Id.  "In cases where the indictment 'tracks the words of the statute charging the offense,' the indictment will be held sufficient 'so long as the words unambiguously set forth all elements necessary to constitute the offense.' "  United States v. Davis, 336 F.3d 920, 922 (9th Cir. 2003).

### B. Motion to Dismiss

Defendant moves to dismiss Counts 1-8 of the superseding indictment on the ground that the government has failed to allege essential elements of the charges alleged.  Def.'s Mtn. at 3.[1]  Defendant's arguments are discussed in turn below.

#### 1. Honest Services Wire Fraud

Counts 1-4 of the superseding indictment charge Defendant with one count of conspiracy to commit honest services wire fraud and three counts of honest services wire fraud in violation of 18 U.S.C. §§ 1359, 1343 and 1346.  See Superseding Indictment ¶¶ 7-10.  The wire fraud statute provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. . . .

18 U.S.C. § 1343.  "To convict a person of wire fraud, the government must prove beyond a reasonable doubt that the accused (1) participated in a scheme to defraud; and (2) used the wires to further the scheme."  United States v. Ciccone, 219 F.3d 1078, 1083 (9th Cir. 2000) (citation omitted).

As explained by the Ninth Circuit, federal prosecutors have used § 1343, as well as the substantially similar mail fraud statute, 18 U.S.C. § 1341, to develop a theory of "honest services fraud," which occurs when an employee deprives his employer of its right to have

---

[1] In its opposition papers, the government represents that it "intends to amend the indictment to omit Count Five, conspiracy to extort under color of official right, for the reasons stated by this Court during the plea colloquy for co-conspirator Christopher Butler. The government will do so after the Court rules on this motion."  Pl.'s Opp. at 10.

its affairs conducted "free from deceit, fraud, dishonesty, conflict of interest, and self-enrichment," and consistent with the employee's fiduciary duties to the employer.  United States v. Kincaid-Chauncey, 556 F.3d 923, 939 (9th Cir. 2009).  When a public official is involved, the theory relies on the idea that a public official acts as trustee for the citizens and the State and thus owes the normal fiduciary duties of a trustee, e.g., honesty and loyalty to them.  Id.; see United States v. Woodard, 459 F.3d 1078, 1082, 1086 (11th Cir. 2006) (a police officer is a public official that owes a "fiduciary duty to the public to make governmental decisions in the public's best interest"; noting that a police officer's misuse of his office for private gain constitutes fraud).

18 U.S.C. § 1346 provides that the behavior punishable under the wire fraud statute includes a scheme or artifice "to deprive another of the intangible right of honest services."  The Supreme Court has recently held that § 1346, which codifies the offense of honest-services fraud, only criminalizes bribe-and-kickback schemes.  See United States v. Pelisamen, 641 F.3d 399, 402, 404-405 (9th Cir. 2011) ("a defendant may not be convicted of honest-services fraud, except in cases involving bribes or kickbacks"; noting that the "Supreme Court has recently held that the offense of honest-services fraud . . . is unconstitutionally vague when applied to conduct other than bribery and kickbacks") (citing Skilling v. United States, 130 S.Ct. 2896, 2931 (2010)).[2]

While the term "honest services" is not defined in the statute, "the paradigm case of honest services fraud is the bribery of a public official."  See United States v. Langford, 647 F.3d 1309, 1321 (11th Cir. 2011); see also United States v. Bohonus, 628 F.2d 1167, 1171 (9th Cir. 1980) (schemes which deprive others of intangible rights most often involve bribery of public officials).  In cases involving bribery of public officials, "[t]he requisite 'scheme or artifice to defraud' is found in the deprivation of the public's right to honest and

---

[2] In Skilling, the Supreme Court did not define bribery or kickbacks.  However, the Supreme Court cited a statutory definition of kickbacks.  Skilling, 130 S. Ct. at 2933-2934 (" 'The term 'kickback' means any money, fee, commission, credit, gift, gratuity, thing of value, or compensation of any kind which is provided, directly or indirectly, to [enumerated persons] for the purpose of improperly obtaining or rewarding favorable treatment in connection with [enumerated circumstances].' ") (quoting 41 U.S.C. 52(2)).

faithful government.  When a public official is bribed, he is paid for making a decision while purporting to be exercising his independent discretion.  The fraud element is therefore satisfied."  Bohonus, 628 F.2d at 1171.

In the Ninth Circuit, bribery requires at least an implicit *quid pro quo*.  Kincaid-Chauncey, 556 F.3d at 941.  "Only individuals who can be shown to have had the specific intent to trade official actions for items of value are subject to criminal punishment on this theory of honest services fraud."  Id. at 943, n. 15.  The *quid pro quo* necessary for a bribery honest services conviction need not be explicit, and an implicit *quid pro quo* need not concern a specific official act.  Id. at 943 (citing United States v. Kemp, 500 F.3d 257, 282 (3d Cir. 2007) ("[T]he government need not prove that each gift was provided with the intent to prompt a specific official act.")).  A *quid pro quo* requirement is satisfied if the evidence shows a course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official acts favorable to the donor.  Id. at 943.

Relying on Skilling, the Ninth Circuit has recently held that the breach of a fiduciary duty is a required element of honest services fraud.  United States v. Milovanovic, 678 F.3d 713, 721-722, 728-729 (9th Cir. 2012)[3] (noting that in Skilling the Supreme Court stated that "[t]he 'vast majority' of the honest-services cases involved offenders who, *in violation of a fiduciary duty*, participated in bribery or kickback schemes.").[4]  The fiduciary duty required is not limited to the classic definition of the term but also extends to defendants who assume a comparable duty of loyalty, trust, or confidence with the victim.  Id. at 723-724.  "The existence of a fiduciary duty in a criminal prosecution is a fact-based

---

[3] In Milovanovic, the Defendant was not charged with honest services wire fraud in violation of § 1343; rather, he was charged with the substantially similar mail fraud statute, § 1341.  See Milovanovic, 678 F.3d at 719, n. 4.

[4] "A fiduciary is generally defined as '[a] person who is required to act for the benefit of another person on all matters within the scope of their relationship; one who owes to another the duties of good faith, trust, confidence, and candor. . . .' "  Milovanovic, 678 F.3d at 722 (quoting Black's Law Dictionary (9th ed.)).  And courts have held that "fiduciary" encompasses informal fiduciaries.  See id.

determination that must ultimately be determined by a jury properly instructed on this issue."  Id. at 723.

A specific intent to defraud is also a required element of honest services fraud. Kincaid-Chauncey, 556 F.3d at 941.  As with mail fraud, "materiality" is also an essential element of the crime of wire fraud.  Neder v. United States, 527 U.S. 1, 20-25 (1999); Milovanovic, 678 F.3d at 726-727 (adopting the "materiality test" to bring § 1346 in line with the mail, wire, and bank fraud statutes).  In the case of mail or wire fraud, the government need not prove a specific false statement was made.  See United States v. Woods, 335 F.3d 993, 999 (9th Cir. 2003) (if a scheme is devised with the intent to defraud, the fact that there is no misrepresentation of a single existing fact is immaterial; it is only necessary to prove that it is a scheme reasonably calculated to deceive); United States v. Omer, 395 F.3d 1087, 1089 (9th Cir. 2005) (it is the materiality of the scheme or artifice that must be alleged; the materiality of a specific statement need not be pleaded).  "[T]he fraudulent nature of the 'scheme or artifice to defraud' is measured by a non-technical standard."  Woods, 335 F.3d at 998.  "Thus, schemes are condemned which are contrary to public policy or which fail to measure up to the reflection of moral uprightness, of fundamental honesty, fair play and right dealing in the general and business life of members of society."  Id.; see also Omer, 395 F.3d at 1089 (noting that "Neder did not undermine this non-technical standard for measuring fraud, which does not require proof of a specific false statement.").

Here, the superseding indictment charges Defendant with a bribery-based scheme to defraud.  Defendant contends that dismissal of the honest services fraud counts (i.e., Counts 1-4) is appropriate because "the government has failed to allege any facts pertaining to the breach of a fiduciary duty, the material misrepresentation or material fact concealed by [Defendant], and the *quid pro quo* agreement by [Defendant] that caused the deprivation o[f] an intangible right of a particular service."  Def.'s Mtn. at 4 (italics and alterations added).  The Court disagrees.

The Court finds that the superseding indictment sufficiently alleges these elements of an honest services fraud offense. Reading the superseding indictment in its entirety, construing it according to common sense, and interpreting it to include facts which are necessarily implied, the government has alleged that: (1) Defendant knowingly and intentionally devised and participated in a scheme and artifice to defraud, specifically to deprive the public to whom he owed a fiduciary duty of his honest services as a Deputy Sheriff; (2) the fraudulent scheme involves bribes (i.e., cocaine and a firearm) in exchange for Defendant's services (i.e., making arrests and arranging for another officer to make an arrest); (3) the public was deprived of the intangible benefit of Defendant's honest services through the bribery-based scheme as Defendant misused his position for private gain; and (4) Defendant used the wires (via text messages) to execute the fraudulent scheme.

Defendant argues that Counts 1-4 of the superseding indictment should be dismissed because the superseding indictment does not allege a fiduciary duty or a breach of a fiduciary duty. Def.'s Mtn. at 5. While the superseding indictment does not contain the phrase "fiduciary duty," the superseding indictment fairly read alleges that Defendant, a public official,[5] owed a fiduciary duty to the public to provide honest services, and that he breached his duties of honesty and loyalty to the public through his participation in the bribery-based fraudulent scheme. To the extent Defendant argues that the superseding indictment does not allege a breach of fiduciary duty because Defendant's duties under the law required him to prevent crime and assist in its detection, id., this argument lacks merit. Honest services fraud criminalizes bribery schemes where, as here, a public official receives compensation of any kind in exchange for the performance of official duties favorable to the person providing the compensation. See e.g., Langford, 647 F.3d at 1321-1322.

---

[5] Defendant does not dispute that he was a public official at the time of the events giving rise to this action. See Woodard, 459 F.3d at 1096, n. 7 (police officer is a public official that owes the public a fiduciary duty to act in the public's best interest).

Defendant also argues that Counts 1-4 of the superseding indictment should be dismissed because the superseding indictment does not allege a material misrepresentation or the omission of a material fact as required under §§ 1343 and 1346.  Def.'s Mtn. at 6. Defendant contends that "[s]ince making an investigatory stop of an intoxicated driver based upon a citizen's tip is not a material misrepresentation, the Court should dismiss the Honest Services counts. . . ."  Id. at 6 (alteration added).  The Court rejects this argument.

Contrary to Defendant's contention, the government is not required to allege a material misrepresentation or the omission of a material fact to state an actionable charge for honest services wire fraud.  See Woods, 335 F.3d at 998-999.  The materiality element of a wire fraud offense does not require the government to prove a specific false statement or specific omission.  See id.  If a scheme is devised with the intent to defraud, . . . *the fact that there is no misrepresentation of a single existing fact is immaterial.*  It is only necessary to prove that it is a scheme reasonably calculated to deceive . . . ."  Id. at 998 (emphasis in original).  A review of the superseding indictment reveals that the government has sufficiently alleged the materiality element of an honest services wire fraud offense. The superseding indictment fairly read alleges that Defendant participated in a "scheme reasonably calculated to deceive," which deprived the public of its right to Defendant's honest services.  Moreover, even assuming for the sake of argument that the government is required to allege a material misrepresentation or the omission of a material fact, the superseding indictment alleges that the Defendant made specific false statements in furtherance of the fraudulent scheme.  Specifically, it alleges that Defendant falsely stated in his incident reports for the DUI arrests that he was on "routine patrol."  These statements are material misrepresentations because Defendant falsely represented to his employer that he was engaged in official acts on behalf of the public when in fact he was misusing his position for private gain.

Finally, Defendant argues that Counts 1-4 of the superseding indictment should be dismissed because the superseding indictment does not allege an explicit agreement that Defendant received benefits in exchange for a promise of official action.  Def.'s Mtn. at 8.

Defendant contends that "[s]ince the superceding [sic] indictment lacks . . . an explicit, certain *quid pro quo* agreement, the Honest Services Fraud counts are insufficient to state a claim upon which [Defendant] can be charged." Id. at 8 (italics and alterations added). This argument lacks merit. The *quid pro quo* necessary for a bribery honest services conviction need not be explicit. Kincaid-Chauncey, 556 F.3d at 943. A *quid pro quo* requirement is satisfied if the evidence shows a course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official acts favorable to the donor. Id. Here, the allegations in the superseding indictment are sufficient to withstand Defendant's motion to dismiss. The superseding indictment alleges that "[i]n exchange for [Defendant] making DUI arrests and arranging for another officer to make an arrest, C.B. compensated [Defendant] with cocaine and a firearm." Superseding Indictment ¶ 5.

### 2. Hobbs Act

Counts 5-8 of the superseding indictment charge Defendant with violations of the Hobbs Act. Specifically, the superseding indictment charges Defendant with one count of conspiracy to extort under color of official right in violation of 18 U.S.C. § 1951; one count of extortion under color of official right, aiding and abetting in violation of 18 U.S.C. §§ 1951 and 2; and two counts of extortion under color of official right in violation of 18 U.S.C. § 1951. See Superseding Indictment ¶¶ 11-18.

18 U.S.C. § 1951 provides:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

"The term 'extortion' means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2).

To convict Defendant of Hobbs Act extortion under a color of official right theory, the government must prove that he: (1) was a government official; (2) who accepted

property to which he was not entitled; (3) knowing that he was not entitled to the property; (4) knowing that the payment was given in return for official acts; and (5) which had at least a *de minimis* effect on commerce. Kincaid-Chauncey, 556 F.3d at 936. A conviction for extortion under color of official right requires that the government prove a *quid pro quo*. Id. at 937. The official and the payor need not state the *quid pro quo* in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods. Id. (quotation marks omitted). An explicit *quid pro quo* is not required; an agreement implied from the official's words and actions is sufficient to satisfy this element. Id. (citing Evans v. United States, 504 U.S. 255, 268 (1992) ("[The] Government need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts.")).

Here, Defendant is charged under the "official right" theory of extortion. Defendant contends that dismissal of the Hobbs Act charges is appropriate because "the government failed to allege an obtaining of property of another, the effect [sic] on interstate commerce, or a *quid pro quo*[,] which are each essential elements of a Hobbs Act violation. Def.'s Mtn. at 8 (italics and alteration added). The Court disagrees.

The Court finds that the superseding indictment sufficiently alleges these elements of a Hobbs Act extortion offense. Reading the superseding indictment in its entirety, construing it according to common sense, and interpreting it to include facts which are necessarily implied, the superseding indictment alleges that Defendant, a Deputy Sheriff, did knowingly and intentionally obstruct, delay, and affect commerce by extortion (or aided and abetted or conspired to do the same) by obtaining property not due to him from C.B. (i.e., cocaine and a firearm), with C.B.'s consent, in exchange for making and arranging traffic stops and arrests for DUI under color of official right.

Defendant argues that Counts 5-8 of the superseding indictment should be dismissed because the allegation that he obtained cocaine and a firearm from C.B. after the DUI arrests, standing alone, cannot establish a Hobbs Act extortion violation. Def.'s Mtn. at 9-10. Defendant, however, did not cite any authority demonstrating that dismissal is

appropriate on this ground. Indeed, with respect to obtaining property, to survive a motion to dismiss the government must allege that Defendant accepted property to which he was not entitled, and that he knew he was not entitled to receive the property. See Kincaid-Chauncey, 556 F.3d at 936. The superseding indictment fairly read alleges sufficient facts to satisfy this element of a Hobbs Act extortion offense. The superseding indictment alleges that Defendant knowingly and intentionally obtained property not due to him from C.B. (i.e., cocaine and a firearm), with C.B.'s consent, in exchange for making and arranging traffic stops and arrests for DUI under color of official right.

Defendant also argues that Counts 5-8 of the superseding indictment should be dismissed because "[w]hile the government only needs to prove 'a *de minimis* effect on interstate commerce,' " there are no allegations in the superseding indictment establishing that Defendant obstructed, delayed, or affected interstate commerce. Def.'s Mtn. at 10 (alteration and italics added). Defendant, however, does not point to any controlling authority establishing that the allegations in the superseding indictment are insufficient to survive a motion to dismiss on this ground. Moreover, because the superseding indictment tracks the statutory language by alleging that Defendant's extortion affected interstate commerce, the government has adequately pled this element of a Hobbs Act extortion offense. Davis, 336 F.3d at 922.

Finally, Defendant argues that Counts 5-8 of the superseding indictment should be dismissed because the government failed to allege an explicit *quid pro quo* agreement between Defendant and C.B. Def.'s Mtn. at 11. Contrary to Defendant's contention, an explicit *quid pro quo* is not required; an agreement implied from the official's words and actions is sufficient to satisfy this element. See Kincaid-Chauncey, 556 F.3d at 937 (citing Evans, 504 U.S. at 268 ("[The] Government need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts.")). Here, the allegations in the superseding indictment fairly read sufficiently allege this element of a Hobbs Act extortion offense. The superseding indictment alleges that Defendant received compensation (i.e., cocaine and a firearm) not

due to him from C.B. in exchange for making DUI arrests and arranging for another officer to make an arrest.

## III. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT:

1. Defendant's motion to dismiss is DENIED.

2. The motion hearing scheduled for November 20, 2012 is VACATED. The parties shall contact the Duty Magistrate Judge of the Oakland Division of this Court forthwith to schedule the matter for a status conference.

3. This Order terminates Docket 39.

IT IS SO ORDERED.

Dated: 11-19-12

_____
SAUNDRA BROWN ARMSTRONG
United States District Judge