MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

HARTLEY M. K. WEST (CABN 191609)
PHILIP J. KEARNEY (CABN 114978)
Assistant United States Attorneys

   450 Golden Gate Ave., Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-7200
   Fax: (415) 436-7234
   E-Mail: hartley.west@usdoj.gov
         philip.kearney@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STEPHEN TANABE, ) <br> ) <br> Defendant. ) <br> ) | No. CR 11-0941 CRB <br><br> **UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 3 – ALLOW USE OF PRIOR BAD ACTS AGAINST GOVERNMENT WITNESSES** <br><br> Pretrial Conf.: August 8, 2013 <br> Time: 9:30 a.m. |

The United States opposes defendant Stephen Tanabe's Motion in Limine No. 3, to allow use of prior bad acts against government witnesses Chris Butler and Carl Marino. CR 74.[1]

///

///

///

---

[1] "CR" refers to Clerk's Record and denotes the filing number in the docket. A colon and number following the docket number indicates the page.

U.S. OPP. TO DEFT'S MTN. IN LIMINE NO. 3 –
ALLOW USE OF PRIOR BAD ACTS
CR 11-0941 CRB

# SUMMARY OF RELEVANT FACTS

**A.    Butler's Uncompensated Use of Other Law Enforcement Officers**

Private investigator Chris Butler recalls conducting approximately twelve successful DUI stings. When Butler first started conducting DUI stings, he called police dispatch when he believed the target was going to drive drunk. Going through dispatch created the risk that the target would drive away before law enforcement arrived. Butler realized that this risk would be minimized if he could call an officer directly, and would disappear entirely if the officer were waiting where the target was drinking.

For three of the stings – the subject of the charges in this case – Butler called Tanabe. When he could, Butler arranged the stings to be in Tanabe's area of duty (Danville), on a day he believed Tanabe would be on duty. When Tanabe ended up being off duty on one of those days, Tanabe sat at the bar with Butler watching the target drink, and then called a colleague to perform the DUI stop. The evidence will show that Tanabe demanded compensation for these stops, and that Butler paid him with cocaine and a Glock pistol.

Butler contacted other officers directly for stings outside of Danville. He talked to Concord Police Officer Don Lawson twice, once in the successful DUI sting of David Dutcher and once in an unsuccessful sting. Butler contacted Piedmont Police Officer Mike Munoz in one attempted sting – a first attempt at David Lane Bauldry, who was ultimately arrested after a successful sting with Tanabe. And he contacted San Ramon Police Officer Louis Lombardi to get the number of an on-duty officer for a planned sting in San Ramon. Lombardi provided the name of Officer Jason Barnes. Barnes, however, said he would only assist if Butler agreed to be named as the reporting party. When Butler declined, so did Barnes. Butler did not compensate any of these officers for their assistance. In an interview with the FBI and the U.S. Attorney's Office, Tanabe identified Lawson as the only officer other than himself whom he knew had made DUI arrests for Butler.

/ / /

/ / /

/ / /

### B. Marino's Other Stings

Carl Marino worked for Butler & Associates. In the course of his employment, he was involved in several of Butler's stings, including the two DUI stings for which Tanabe conducted the arrests (Hasan Aksu and Mitchell Katz), a "scared straight" sting, and an attempted sting of a Richmond Police Officer. In the "scared straight" sting, a mother hired Butler to stage a fake bust of her son whom she believed was selling drugs, with the intent to "scare him straight." Marino pretended he was a police officer. Although he wore plain clothes, he displayed an unloaded gun. In the attempted sting of the Richmond officer, Marino posed as an outraged boyfriend delivering to a police lieutenant a videotape that Butler had made of the officer making out with Marino's "girlfriend" (a Butler decoy) while on duty.

### C. Marino's Prior Convictions

Marino has two prior convictions. According to criminal history records, on August 25, 2008, Marino entered a guilty plea in Brighton Town Court, Monroe County, New York to driving while ability impaired by the consumption of alcohol, in violation of New York Vehicle and Traffic Law (VTL) § 1192(1). This was based on an arrest by the Monroe County Sheriff's Department on July 25, 2008. The record shows that the court ordered Marino to pay a $300 fine and suspended his license for 90 days. No other DUI conviction appears on Marino's record. The maximum custodial sentence for a § 1192(1) violation, an infraction, is fifteen days. *See* New York VTL § 1193(1).

Criminal history records also show that Marino was arrested on January 28, 2008, by the Monroe County Sheriff's Department for a violation of New York Penal Law § 145, Criminal Mischief in the fourth degree, and that he was subsequently charged with violating § 145 and assault in violation of Penal Law § 120.00. The arrest report shows that Marino was involved in a domestic dispute with his wife and another man, and that the other man's cell phone was damaged in connection with the encounter. On July 10, 2008, Marino pleaded guilty to disorderly conduct in violation of Penal Law § 240.20; the other charges were dismissed. (Thus, Tanabe's description of this as an assault conviction is incorrect. CR 74:6.) Marino was sentenced to a one-year conditional discharge, a two-year no contact order of protection, a $250

fine, and a $100 surcharge.

## ARGUMENT

**A.      The Court Should Exclude Evidence of Butler's "Other Acts"**

      1.      <u>Tanabe failed to provide notice of Butler's "other acts"</u>

Tanabe does not specifically identify what "other acts" of Chris Butler he wants to admit. He never provided a summary of such acts pursuant to the notice requirements of Local Rule 16-1(c)(3), nor does he particularly describe the acts in his motion to allow their use.

      2.      <u>Evidence of Butler's uncompensated use of other officers is prohibited under Rule 404(b)</u>

Absent detailed notice, the government presumes that the general nature of the acts Tanabe seeks to admit is Butler's enlistment of other law enforcement officers' assistance in his DUI stings, and the fact that Butler did not compensate them, which Tanabe discusses in his motion. CR 74:4. While Tanabe does not say so, the government further presumes that he intends to call these other officers as witnesses, because they received trial subpoenas. This evidence is prohibited under Federal Rule of Evidence 404(b).

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Other act evidence may only be admitted "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Where admissible, other acts may be admitted against third parties. *United States v. McCourt*, 925 F.2d 1129, 1236 (9th Cir. 1991). However, such evidence, "no matter by whom offered, is not admissible for the purpose of proving propensity or conforming conduct." *Id.* at 1235.

Tanabe argues that Butler's uncompensated use of other officers is not improper character evidence, but rather "show[s] that Mr. Butler had a common plan or scheme to exploit his relationships with police officers to promote his shady business activities." CR 74:4. In other words, Tanabe offers the evidence to prove that, because Butler did not pay off other cops, he did not pay off Tanabe. This is exactly the leap that Rule 404(b) prohibits. Other acts cannot be

1    offered to prove conforming conduct.  *McCourt*, 925 F.2d at 1235.  Just as the rule excludes
2    evidence that a defendant committed a prior bad act offered for the purpose of proving
3    conforming conduct, so does it exclude evidence that Butler did *not* commit a prior bad act –
4    paying off cops – offered for the purpose of proving that he did not commit it this time either.

5    No case Tanabe cites holds otherwise.  In *United States v. McClure*, the district court had
6    excluded evidence offered by an accused drug dealer that a DEA informant coerced others into
7    selling drugs.  546 F.2d 670 (5th Cir. 1977).  The Fifth Circuit reversed, holding that "evidence
8    of a systematic campaign of threats and intimidation against other persons is admissible to show
9    lack of criminal intent by a defendant who claims to have been illegally coerced."  *Id.* at 672-73.
10   *United States v. Robinson* reversed the exclusion of identity evidence in a bank robbery case,
11   specifically that an uncharged person, similar in appearance, had robbed two banks a few days
12   before the robbery with which the defendant was charged.  544 F.2d 110 (2d Cir. 1976).  And in
13   *United States v. Aboumoussallem*, the district court had barred an accused drug importer from
14   offering evidence of his alleged co-conspirator's modus operandi – prior use of unwitting dupes
15   to courier the drugs.  726 F.2d 906 (2d Cir. 1984).  The Second Circuit reversed, holding that
16   evidence of the third party's modus operandi was admissible under Rule 404(b) because it was
17   relevant to the defendant's knowledge that he was carrying drugs in his briefcase.  *Id.* at 912.
18   These cases stand for nothing more than that Rule 404(b) applies to defendants, too.  Like the
19   government, defendants can introduce "other acts" evidence when it is relevant to prove
20   something other than propensity or conforming conduct.

21   By contrast, evidence that Butler asked other law enforcement officers to pull over drunk
22   drivers without a quid pro quo does not make Tanabe's knowledge, intent, absence of mistake or
23   any other relevant inquiry.  Because Tanabe's sole basis for offering the evidence is to prove
24   conforming conduct, the evidence is inadmissible under Rule 404(b).

25       3.    <u>Extrinsic evidence of Butler's "other acts" is inadmissible under Rule 403</u>
26   Courts may "exclude relevant evidence if its probative value is substantially outweighed
27   by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay,
28   wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

U.S. OPP. TO DEFT'S MTN. IN LIMINE NO. 3 –
ALLOW USE OF PRIOR BAD ACTS
CR 11-0941 CRB            5

Even were the Court to find some probative value in Butler's uncompensated use of other officers, the Court should limit Tanabe's exploration of the topic to cross-examination. Allowing Tanabe to examine Officers Lawson, Munoz, Lombardi, and/or Barnes about their involvement with Butler's DUI stings, or to introduce police reports related to these other DUI stings, would simply confuse the issues and result in undue delay. Tanabe's purpose in offering the evidence – to show that other officers acted on Butler's tips without compensation – can be achieved simply by asking Butler. Only if Butler were to testify falsely would Tanabe be able to offer extrinsic evidence on the issue. *See United States v. Hinkson*, 611 F.3d 1098, 1113 (9th Cir. 2010) (recognizing that extrinsic evidence is admissible for impeachment by contradiction).

    4.    <u>Tanabe may cross-examine Butler about the other DUI stings under Rule 608(b) but extrinsic evidence is inadmissible</u>

Federal Rule of Evidence 608(b) provides:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness.

Fed. R. Evid. 608(b).

The government concedes that Butler's organization of DUI stings, in which he created scenarios and roles for decoys to play, may be relevant to his character for truthfulness. Tanabe should therefore be allowed to cross-examine Butler about them, solely to the extent they bear on his character for truthfulness. Admission of extrinsic evidence for this purpose, however, is expressly prohibited.

**B.    The Court Should Exclude Evidence of Marino's "Other Acts"**

    1.    <u>Tanabe failed to provide notice of Marino's "other acts"</u>

Contrary to Local Rule 16-1(c)(3), Tanabe never provided the government with a detailed summary of the "other acts" of Carl Marino he seeks to admit. He does describe the "scared straight" and Richmond police officer stings in his motion, as well as Marino's prior convictions. His motion, however, also argues the admissibility under Rule 404(b) of Marino's "actions during these *and other prior bad acts*," without specifying what those other acts are. CR 74:5-6

(emphasis added). The Court should exclude any "other acts" for which the government has not been afforded notice.

2. Marino's "other acts" are not admissible under Rule 404(b)

Tanabe contends that Marino's involvement in the "scared straight" and Richmond officer stings, as well as Marino's prior convictions, are admissible under Rule 404(b). He is wrong.

Tanabe argues that he is not offering the sting evidence to prove criminal propensity, but rather "to prove motive, intent, and knowledge." CR 74:6. He elaborates: "[Marino's] actions during these and other bad acts help to establish his continued motive and intent to set people up to move ahead in his desired career. Time and time again, Mr. Marino committed these criminal acts knowing the consequences and showing his true intent." *Id.* This makes no sense. Marino's knowledge of "consequences" (whatever that means) and his intent are irrelevant to the question whether Tanabe took cocaine and a gun in exchange for his role in DUI arrests.

Similarly, Tanabe argues that Marino's prior DUI and disorderly conduct convictions are admissible "to establish [Marino's] knowledge of the consequences of a driving under the influence conviction and an internal affairs investigation." *Id.* Again, Marino's knowledge of "consequences" is irrelevant to the issue Tanabe's guilt. The only possible purpose of offering these convictions is to try to show that Marino is of bad character.

3. Tanabe may cross-examine Marino about his role in the other stings under Rule 608(b) but extrinsic evidence is inadmissible

The government concedes that Marino's involvement in the "scared straight" and Richmond officer stings is somewhat probative of his truthfulness. Part of Marino's role at Butler & Associates was playing the part of someone he is not. Accordingly, under Rule 608(b), the Court may properly allow Tanabe to cross-examine Marino about the stings, but may not admit extrinsic evidence.

///

///

///

U.S. OPP. TO DEFT'S MTN. IN LIMINE NO. 3 –
ALLOW USE OF PRIOR BAD ACTS
CR 11-0941 CRB             7

4. <u>The Court should exclude any evidence of or reference to Marino's prior convictions under Rule 609</u>

The admissibility of prior convictions for the purpose of attacking the character for truthfulness of a witness is addressed in Federal Rule of Evidence 609(a). *See United States v. Osazuwa*, 564 F.3d 1169, 1175 (9th Cir. 2009) (evidence relating to impeachment by way of a criminal conviction is treated exclusively under Rule 609). Rule 609(a) allows a witness to be "impeached with a prior conviction if (1) 'the crime was punishable by death or imprisonment in excess of one year under the law under which he was convicted' or if (2) the crime 'involved dishonesty or a false statement, regardless of the punishment.'" *United States v. Colbert*, 116 F.3d 395, 396 (9th Cir. 1997). For the latter category, a conviction is admissible "if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness." Fed. R. Evid. 609(a)(2).

Neither of the Marino's convictions is admissible under Rule 609. The offenses are not punishable by imprisonment in excess of one year, nor are they crimes that involve dishonesty or a false statement. Accordingly, the Court should preclude Tanabe from raising or referring to these convictions during Marino's cross-examination.

5. <u>Extensive evidence of Marino's "other acts" should be excluded under Rule 403</u>

As stated above, the government does not object to cross-examination of Marino regarding his role in other stings, to the extent it is probative of his character for truthfulness. Yet such cross-examination must be limited by Rule 403. *See United States v. Olsen*, 704 F.3d 1172, 1184 n.4 (9th Cir. 2013) ("Rule 608(b) of the Federal Rules of Evidence authorizes courts to permit inquiry into specific instances of conduct during cross-examination if they are probative of the character for untruthfulness of the witness – subject, of course, to the balancing analysis of Rule 403.").

At some point, however, the probative value of Marino's role in other stings is substantially outweighed by the risks of unfair prejudice, confusing and misleading the jury, undue delay, wasting time, and needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403. While some cross-examination is permissible, extensive exploration of the details of the

stings crosses the Rule 403 line. Moreover, extrinsic evidence is inadmissible unless necessary to contradict false testimony. *See Hinkson*, 611 F.3d at 1113.

**C.  Compliance with the Federal Rules of Evidence Will Not Violate Tanabe's Constitutional Rights**

Tanabe urges that refusal to admit Butler and Marino's "other act" evidence will violate his Due Process, Compulsory Process, and Confrontation Clause rights. CR 74:8. Not so.

"[T]he proposition that the Due Process Clause guarantees the right to introduce all relevant evidence is simply indefensible." *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). "'The accused does not have an unfettered right to offer [evidence] that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence.'" *Id.* (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).

Similarly, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.").

Likewise, the right of Compulsory Process – the right of an accused to present witnesses in his defense – "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). *See also United States v. Ross*, 372 F.3d 1097, 1113 (9th Cir. 2004) (no Compulsory Process violation where court excluded cumulative witness testimony); *Perry v. Rushen*, 713 F.2d 1447, 1450 (9th Cir. 1983) (recognizing that right to compulsory process is not absolute).

The Court should exercise its broad discretion to impose reasonable limits on Butler's cross-examination, calling of witnesses, and introduction of evidence within the bounds of the Federal Rules of Evidence.

## CONCLUSION

For the above stated reasons, the Court should exclude evidence of Butler's uncompensated use of other officers, exclude evidence of Marino's prior convictions, and permit cross-examination of Butler and Marino as to specific instances of conduct bearing on their character for truthfulness, while excluding extrinsic evidence of such conduct.

DATED: August 5, 2013

Respectfully submitted,

MELINDA HAAG
United States Attorney

/s/
_____
HARTLEY M. K. WEST
PHILIP J. KEARNEY
Assistant United States Attorneys